**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **vs.** § | |
| § | |
| **CHARLES E. SMITH, CPA, and** § | |
| **MARK SMITH, CPA,** § | **CIVIL ACTION** |
| § | **No.** _3-14-cv-3874_ |
| § | |
| **Defendants,** § | |
| § | |

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY OF THE ACTION

1.      Since at least 2006, Charles Smith, along with his brother Mark Smith (together, the "Smiths" or "Defendants") have run a "shell factory" scheme.  The scheme has involved eight public shell companies (the "Public Shell Companies").

2.      The Smiths carried out the scheme by "renting" legitimate operating companies from small business owners in exchange for the promise of additional financing.  This financing was to be raised in a public stock offering (a/k/a an "IPO").  But contrary to the promises made by the Smiths to the business owners and to the information disclosed to the public, most of the money raised was retained by the non-operating holding companies controlled by the Smiths— instead of being used to finance the small businesses.

3.      The Smiths did not publicly disclose their true purpose—to sell the Public Shell Companies in future reverse merger transactions.  Nor did they disclose that they had structured the

scheme to avoid Commission rules concerning the sale or merger of blank check companies.[1]  In

order to protect investors, these rules impose heightened requirements for mergers with public

shell companies.

       4.     The business owners had little or no involvement in the reverse merger transactions.

Nor did they typically receive the financing promised by the Smiths.  The Smiths, on the other hand,

received significant cash proceeds and stock from the transactions.

       5.     In the course of executing their scheme and in violation of the antifraud

provisions of the federal securities laws, the Smiths have filed and caused the Public Shell

Companies to file materially false and misleading registration statements and periodic reports.

The Smiths have also violated a number of other provisions of the federal securities laws.

       6.     The Commission seeks orders enjoining the Smiths from future violations of the

federal securities laws along with civil penalties, disgorgement with prejudgment interest, penny

stock bars, and—for Charles Smith—a bar from serving as a public company officer or director.

**JURISDICTION AND VENUE**

       7.     The Commission brings this action pursuant to Section 20(b) of the Securities Act of

1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d) of the Securities Exchange Act of

1934 ("Exchange Act") [15 U.S.C. § 78u(d)].

       8.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27

of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

       9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act [15

U.S.C. § 78aa] because the Defendants live in, and a substantial portion of the conduct alleged in

this complaint occurred within, the Northern District of Texas.

---

[1] A blank check company is a development-stage company that either does not have an established business plan or
has a business plan based around a merger or acquisition with another company or companies.

## DEFENDANTS

10.     **Charles E. Smith, CPA**, age 57, resides in Rockwall, Texas.  Charles Smith founded Yorkdale Capital, LLC in December 2005 and, since 2006 has served as a principal of Yorkdale.  Yorkdale's offices are located in Rockwall.  Charles Smith has also been a self-employed accountant, doing business as Charles E. Smith, CPA.  Charles Smith's accounting activities are based out of Rockwall.

11.     **Mark Smith, CPA**, age 50, resides in Allen, Texas.  Mark Smith joined Charles Smith as Yorkdale's co-principal in 2006 and remained in that role until he resigned earlier this year.  Mark Smith has also been a self-employed accountant, doing business under the name AM Group.  Mark Smith's accounting activities are based out of Rockwall, TX and Allen, TX.

## THE PUBLIC SHELL COMPANIES

12.     **Hall Tees, Inc.** is a Nevada corporation located in Rowlett, Texas.  The Smiths formed it as a holding company in 2007 to acquire 100% of the membership interests of Hall Tees & Promotions, LLC and took it public through a registration statement that became effective on December 23, 2009.  The company remained under the control of the Smiths during the course of their scheme.  It is currently quoted on OTC Link under the ticker HTEE.

13.     **Phoenix Medical Software, Inc.** is a Cayman Islands company located in Ovilla, Texas.  The Smiths formed it as a holding company in 2007 and took it public through a registration statement that became effective on July 6, 2007.  The company remained under the control of the Smiths during the course of their scheme.  It currently has no operations other than to complete regulatory filings.  It is currently quoted on OTC Link under the ticker PHXMF.

14.     **Surface Coatings, Inc.** is a Texas corporation located in Rockwall, Texas.  The Smiths formed it as a holding company in 2007 and took it public through a registration

statement that became effective on October 14, 2008.  The company remained under the control of the Smiths during the course of their scheme.  It currently has no operations other than to complete regulatory filings.  It is currently quoted on OTC Link under the ticker SCTZ.

15.    **Flint Int'l Services, Inc.** is a British Virgin Islands company located in Vaughn, Ontario, Canada.  The Smiths formed it as a holding company in 2010 to acquire 100% of the membership interests of Flint Management, LLC and took it public through a registration statement that became effective on January 27, 2012.  The company remained under the control of the Smiths during the course of their scheme.  It is currently quoted on OTC Link under the ticker FNTSF.

16.    **Global Condiments, Inc.** was a Nevada corporation headquartered in State College, Pennsylvania.  The Smiths formed it as a holding company in 2009 to acquire 100% of the membership interests of Herlocher Foods Online, LLC and took it public through a registration statement that became effective on July 8, 2010.  The Smiths controlled the company until December 31, 2013, when the company completed a reverse merger transaction with Southport Lane, Inc.  Within six months of closing the reverse merger, Southport Lane ceased operations and deregistered the securities of Global Condiments.

17.    **Kingdom Koncrete, Inc.** was a Nevada corporation headquartered in Rockwall, Texas.  The Smiths formed it as a holding company in 2006 to acquire 100% of the membership interests of Kingdom Concrete, Inc. and took it public through a registration statement that became effective on July 27, 2007.  The Smiths controlled the company until May 30, 2014, when the company completed a reverse merger with Latitude 360, Inc.  The company is currently quoted on OTC Link under the ticker LATX.

18.     **Premier Oil Field Services, Inc.** was a Nevada corporation headquartered in Royce City, Texas.  The Smiths formed it as a holding company in 2010 to acquire 100% of the membership interests of Coil Tubing Motors Corp. and took it public through a registration statement that became effective on January 7, 2011.  The Smiths controlled the company until April 7, 2014, when the company completed a reverse merger with Perfect Metals Inc.  The company is currently quoted on OTC Link under the ticker AMRR.

19.     **Specialty Contractors, Inc.** was a Nevada corporation headquartered in Rockwall, Texas.  The Smiths formed it as a holding company in 2010 to acquire 100% of the membership interests of Texas Deco Pierre, LLC and took it public through a registration statement filed by the Smiths that became effective on February 10, 2011.  The Smiths controlled the company until April 21, 2014, when it completed a reverse merger transaction with Ciao Telecom, Inc.  The company is currently quoted on OTC Link under the ticker CIAU.

<b>FACTUAL ALLEGATIONS</b>

I.      <u>Background</u>

20.     Since at least 2006, Charles Smith and his brother Mark Smith have run a shell factory scheme.  During that time, they took the eight Public Shell Companies public.  They also sold four of those companies in reverse merger transactions.

21.     The shell factory scheme followed a consistent pattern.  First, Charles Smith (and occasionally Mark Smith) approached a small business owner offering to provide the company additional financing by selling shares of stock in an IPO.  The Smiths would accomplish this by first forming a parent shell company that would "acquire" the small business.  They then solicited investors to buy shares in the now-public shell company.  Even though the small

5

business owner would be named the sole officer and director of the Public Shell Company, the Public Shell Company was actually controlled by the Smiths.

22.     Unbeknownst to the business owners and contrary to the respective IPO prospectuses, the vast majority of the money raised in the IPOs was not used to operate the small businesses.  Instead, it was retained by the shell companies.  Even those amounts that were provided to the small businesses were typically characterized on the shell company's books as loans that eventually had to be paid back to the parent, rather than as distributions of capital that could be retained by the small business.

23.     After the IPO, the small businesses would continue to operate as they always had, even though they were nominally "owned" by the shell company.  The business owners were typically identified in the public filings as chief executive officer, sole director and controlling shareholder of the holding companies.  But in fact, these owners had little or no involvement with the Public Shell Companies.  Nor did they have knowledge of the information—and misinformation—contained in the public filings.  Instead, it was the Smiths who controlled and disseminated this information to the public.

24.     In essence, the Smiths had "rented" the small businesses so they could report their operating activities in the public filings. This created the appearance that the Public Shell Companies were viable companies with long-term business plans—even though the Smiths had always intended to sell the Public Company Shells in reverse merger transactions.  The Smiths structured their scheme this way in order to avoid the disclosures required by the Commission's blank check company rules.

25.     The Smiths ultimately sought to profit from the scheme by selling the Public Shell Companies in reverse merger transactions.  They arranged these transactions by introducing

parties seeking a reverse merger to one or more of the Public Shell Companies. The Smiths arranged reverse merger transactions for four of the eight Public Shell Companies.

26.     Charles Smith structured these reverse merger transactions so that all of the small business owners' stock in the public shell was cancelled in exchange for the return of ownership of their original small business. This left the owners with little or no proceeds. Instead, they were left essentially where they started—with small, private businesses, having received little or nothing from their association with the Smiths and the Public Shell Companies. Meanwhile, the Smiths received significant proceeds from the reverse merger transactions. In addition, they, their friends, and family received stock in the new public companies.

II.     <u>False and Misleading Registration Statements</u>

27.     In the course of their scheme, the Smiths filed and caused the Public Shell Companies to file materially false and misleading registration statements. For example, these filings failed to disclose the Smiths' control of the Public Shell Companies. Instead, they identified the business owners as the sole officers and directors of these companies. They also falsely stated that the Public Shell Companies rely upon the small business owners to direct the affairs of the Public Shell Companies. In fact, the Smiths directed virtually all of the affairs of these companies.

28.     The registration statements prepared by the Smiths also contained false and misleading statements about the anticipated use of proceeds from the IPOs and the true purpose of the Public Shell Companies. For example, the "Use of Proceeds" section of the registration statements consistently stated that approximately 90% of the funds raised would go to the operating subsidiary (i.e., the original small business). In reality, the Smiths typically sent the

operating subsidiary only a small portion of the IPO proceeds—and then recorded that payment as a "loan," rather than an investment.

29.     The registration statements also falsely stated that the sale of stock in the IPOs would be "made by personal contact by" the sole officer and director of the Public Shell Company (i.e., the small business owner).  In reality, Charles Smith (and occasionally Mark Smith) was responsible for identifying and soliciting the shareholders.  At least 89% to 99% of those shareholders were trusts or other business interests controlled by the Smiths, or were the Smiths' friends, relatives or acquaintances.

III.    <u>False and Misleading Periodic Reports</u>

30.     The Smiths caused the Public Shell Companies' periodic public reports—which were prepared and filed by the Smiths—to contain many of the same material misstatements or omissions as the registration statements—as well as other false statements.

31.     For example, the publicly-filed financial statements failed to disclose that the Smiths expected to be paid significant sums from the Public Shell Companies as a result of services apparently being provided to them by Yorkdale.  When Yorkdale provided these services, the Smiths neither invoiced the Public Shell Companies, nor caused them to accrue or otherwise record the amounts supposedly owed to the Smiths and/or Yorkdale.  As a result of the Smiths' failure to include those obligations on the financial statements, investors and other reviewers of the financial statements could not tell that the Public Shell Companies owed large sums to the Smiths.

32.     In addition, the periodic filings for some of the Public Shell Companies falsely describe the reasons leading to the divestiture of each company's wholly owned subsidiary. For example, in a Form 8-K filed with the Commission on August 1, 2012 and amended on August

3, 2012, the Smiths caused Surface Coatings to falsely announce that it had divested its wholly owned subsidiary Surface Armor, LLC "due to losses and continuing related expenses."  In reality, the company was divested after the owner of Surface Armor began to feel uncomfortable with the Smiths' scheme, voiced his concerns to the Smiths, and refused to sign any more public filings.  To keep the company current in its filings and cover up the owner's concerns, Charles Smith fraudulently signed the owner's name to two filings—a Form 12b-25 filed with the Commission on May 15, 2012 and a subsequent Form 10-Q filed with the Commission on May 21, 2012.

33.     Similarly, in a Form 8-K filed on March 7, 2013 and amended on February 4, 2014, the Smiths caused Specialty Contractors to falsely announce that the public company had divested its wholly owned subsidiary Texas Deco Pierre, LLC "due to continuing losses."  However, as with Surface Armor, the divestiture of Specialty Contractors' operating subsidiary was actually to resolve a dispute between the Smiths and the sole officer and director of the company.

IV.     <u>False Statements to Auditors</u>

34.     At the direction of the Smiths, the small business owners, who were the nominal officers and directors of the Public Shell Companies, signed management representation letters to the company auditors.  The Smiths prepared these letters.

35.     These letters failed to disclose that the Public Shell Companies' public filings failed to disclose material information—including that the Smiths controlled the companies as well as the actual amounts that the companies owed to the Smiths and/or Yorkdale.

## FIRST CLAIM FOR RELIEF

### (against Charles Smith only)

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder*

36.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

37.     Charles Smith violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5], which prohibit any person from employing, in connection with the purchase or sale of any security registered on a national security exchange, any manipulative or deceptive device or contrivance.  Unless restrained and enjoined, Charles Smith will continue to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## SECOND CLAIM FOR RELIEF

### (against both Defendants)

*Violations of Section 17(a) of the Securities Act*

38.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

39.     Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)] prohibit any person from, in the offer or sale of securities: (1) employing devices, schemes or artifices to defraud;  (2) obtaining money or property by means of untrue statements or omissions; and (3) engaging in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

40.     Charles Smith violated and, unless restrained and enjoined, will continue to violate Sections 17(a)(1)-(3) of the Securities Act [15 U.S.C. § 77q(a)].

41.     Mark Smith violated and, unless restrained and enjoined, will continue to violate Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## THIRD CLAIM FOR RELIEF

### (against Charles Smith only)

*Violations of Section 15(a) of the Exchange Act*

42.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

43.     Charles Smith violated Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)], which makes it unlawful for any broker or dealer to use jurisdictional means, such as the telephone or mails, to effect any transaction in, or to induce or attempt to induce, the purchase or sale of any security unless such broker: (1) is registered with the Commission; (2) in the case of a natural person, is an associated person of a registered broker-dealer; or (3) satisfies the conditions of an exemption or safe harbor.

44.     Unless restrained and enjoined, Charles Smith will continue to violate Section 15(a) of the Exchange Act.

## FOURTH CLAIM FOR RELIEF

### (against both Defendants)

*Aiding and Abetting Violations of Sections 13(a) and 15(d) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 Thereunder*

45.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

46.     The Public Shell Companies controlled by the Smiths violated Sections 13(a) and 15(d) of the Exchange Act [15 U.S.C.  §§ 78m(a) and 78o(d)] and Rules 12b-20, 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, and 240.15d-13], which require certain issuers to file with the Commission accurate quarterly, current and annual reports.  The Smiths aided and abetted these violations.

47.     Unless restrained and enjoined, the Smiths will continue to aid and abet violations of Sections 13(a) and 15(d) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 13a-13, 15d-1, and 15d-13 thereunder.

## FIFTH CLAIM FOR RELIEF

### (against both Defendants)

*Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act
and Violations of Rule 13b2-1 Thereunder*

48.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

49.     The Public Shell Companies controlled by the Smiths violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which requires certain reporting companies to make and keep accurate books, records, and accounts.  The Smiths aided and abetted these violations.  The Smiths also violated Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], which prohibits any person from directly or indirectly falsifying any book, record, or account subject to Section 13(b)(2)(A).

50.     Unless restrained and enjoined, the Smiths will continue to aid and abet violations of Section 13(b)(2)(A) of the Exchange Act.

51.     Unless restrained and enjoined, the Smiths will continue to violate Rule 13b2-1 thereunder.

## SIXTH CLAIM FOR RELIEF

### (against Charles only)

*Violations of Section 13(b)(5) of the Exchange Act*

52.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

53.     Charles Smith violated Section 13(b)(5) of the Exchange Act [15 U.S.C. §
78m(b)(5)], which provides that no person shall knowingly falsify certain books, records, and
accounts.

54.     Unless restrained and enjoined, Charles Smith will continue to violate Section
13(b)(5) of the Exchange Act.

## SEVENTH CLAIM FOR RELIEF

### (against both Defendants)

*Violations of Rule 13b2-2 under the Exchange Act*

55.     The Commission realleges and incorporates by reference Paragraphs 1 through 35.

56.     The officers and directors of the Public Shell Companies controlled by the Smiths
violated Rule 13b2-2 under Exchange Act [17 C.F.R. § 240.13b2-2], which prohibits a director or
officer of an issuer of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. §
78l] from, in connection with a financial statement audit: (1) making or causing to be made a
materially false and misleading statement to an accountant; or (2) omitting to state any material fact
necessary in order to make statements made, in light of the circumstances under which such
statements were made, not misleading.  The Smiths aided and abetted these violations.

57.     Unless restrained and enjoined, the Smiths will continue to aid and abet violations of
Rule 13b2-2 under the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final
judgment that:

A.  permanently restrains and enjoins Charles Smith from violations of Section 17(a)
of the Securities Act of 1933 [15 U.S.C. §§ 77q(a)] and Sections 10(b), 13(b)(5), and 15(a) of the

Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78o(a)] and Rules 10b-5 and 13b2-1

thereunder [17 C.F.R. §§ 240.10b-1 and 240.13b2-1 ], and from aiding and abetting violations of

Sections 13(a), 13(b)(2)(A), and 15(d) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A),

and 78o(d)] and Rules 12b-20, 13a-1, 13a-11, 13a-13, 13b2-2, 15d-1, and 15d-13 thereunder [17

C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.13b2-2, 240.15d-1, and 240.15d-

13];

     B.   permanently restrains and enjoins Mark Smith from violations of Section 17(a)(2)

and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)] and Rule 13b2-1 under the

Exchange Act [17 C.F.R. § 240.13b2-1], and from aiding and abetting violations of Sections

13(a), 13(b)(2)(A) and 15(d) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and

78o(d)] and Rules 12b-20, 13a-1, 13a-11, 13a-13, 13b2-2, 15d-1, and 15d-13 thereunder [17

C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.13b2-2, 240.15d-1, and 240.15d-

13];

     C.   orders the Smiths to disgorge all ill-gotten gains, with prejudgment interest;

     D.   orders the Smiths to each pay civil penalties pursuant to Sections 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 USC §

78u(d)(3)];

     E.   prohibits Charles Smith, pursuant to Section 21(d)(2) of the Exchange Act [15

U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], from acting as

an officer or director of any issuer that has a class of securities registered under Section 12 of the

Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the

Exchange Act [15 U.S.C. § 78o(d)] for a period of five years following entry of the final

judgment;

F.   prohibits Charles Smith, pursuant to Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)], from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock for a period of five years following entry of the final judgment;

G.   prohibits Mark Smith, pursuant to Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)], from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock for a period of three years following entry of the final judgment;

H.   grants such other relief as the Court may deem just and appropriate; and

I.   retains jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated:  October 31, 2014                              Respectfully submitted,

*/s/ Chris Davis*
Davis
Texas Bar No. 24050483
davisca@sec.gov
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Telephone:      817-900-2638
Facsimile:      817-978-3049

COUNSEL FOR PLAINTIFF SECURITIES AND
EXCHANGE COMMISSION